Bradley L. Booke #5-1676
LAW OFFICE OF BRADLEY L. BOOKE
Box 13160
Jackson, Wyoming 83001
702-241-1631
866-297-4863 fax
brad.booke@lawbooke.com

Darren Spielman, Esq. (FL Bar # 010868)
The Concept Law Group, P.A.
*Pro hac vice*
6400 N. Andrews Ave. Suite 500
Ft. Lauderdale FL 33309
Email: dspielman@conceptlaw.com
Tel: 754-300-1500
Fax: 754-300-1501
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF WYOMING**

| | |
|---|---|
| THAT'S GREAT NEWS, LLC, A FLORIDA LIMITED LIABILITY COMPANY<br><br>Plaintiff/Counterclaim Defendant,<br>V.<br><br>DEVCODA, LLC D/B/A UNISTREETS, A WYOMING LIMITED LIABILITY COMPANY;<br><br>Defendant/ Counterclaim Plaintiff. | Case No. 1:26-cv-000038 |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT THAT'S GREAT NEWS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS**

Plaintiff and Counterclaim-Defendant That's Great News, LLC ("TGN"), by and through undersigned counsel, provides this supporting Memorandum of Law brief regarding the Motion to Dismiss Counts I, II, and III of the Counterclaims, pursuant to Federal Rule of Civil Procedure

12(b)(6), as asserted by Defendant and Counterclaim-Plaintiff Devcoda LLC d/b/a UniStreets ("Devcoda").

**I. Introduction**

This is, at bottom, a copyright dispute. TGN brought seven copyright infringement claims based on seven identified copyright registrations and seven corresponding accused Etsy.com listings. Devcoda responded not only with denials and affirmative defenses, but with three counterclaims that seek to transform the same underlying dispute into a declaratory action, a tortious interference claim, and a defamation claim. (ECF No. 7). Devcoda's pleading itself makes plain that all three counterclaims arise from the same alleged conduct: TGN's assertion of copyright rights through Etsy.com's intellectual property reporting system and the DMCA notice-and-takedown process.

The counterclaims expressly allege that TGN "submitted two separate Digital Millenium Copyright Act ('DMCA') takedown notices to Etsy.com" on December 23 and 24, 2025. ECF No. 7 ¶¶ 30–33. They further allege that Etsy removed Devcoda's listings "pursuant to Etsy's Intellectual Property Policy," that Devcoda then submitted DMCA counter-notices, and that Etsy's actions disrupted Devcoda's storefront. ECF No. 7 ¶¶ 44–49. Counterclaim Count II then alleges that TGN "intentionally and improperly interfered with Devcoda's contract with Etsy.com by falsely claiming, with knowledge of such falsity, in writing, to Etsy.com" that Devcoda was selling infringing products, and specifically identifies the "submitting [of] DMCA takedown notices to Etsy.com" as the supposed improper conduct. ECF No. 7 ¶¶ 71, 75. Counterclaim Count III, in turn, alleges that TGN "published false statements to Etsy," including "reporting to Etsy by submitting DMCA takedown notices to Etsy.com that Devcoda infringed the Asserted Copyright Registrations." ECF No. 7 ¶ 83.

Those counterclaims fail as a matter of law. Counterclaim Count I is duplicative of TGN's infringement claims and of Devcoda's own First Affirmative Defense, which already alleges that Devcoda's accused listings "do not infringe any copyrighted work, including" the same seven copyright registrations at issue in the Complaint. Counterclaim Count II fails because Devcoda does not plausibly allege the essential element of a breach of contract, and because the only alleged interference consists of Etsy-authorized and DMCA-contemplated copyright complaints. Counterclaim Count III fails because it is based on the same communications, which are privileged or, at minimum, subject to a qualified privilege, and because the alleged "falsity" is simply Devcoda's non-infringement position restated as defamation. The counterclaims should be dismissed.

II. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." The Court's function at this stage is not to weigh evidence or resolve factual disputes but to determine whether the counterclaims, as pleaded, are legally sufficient. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). To survive dismissal, a pleading must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Labels, conclusions, and formulaic recitations of elements are not enough. *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214–15 (10th Cir. 2011). Courts accept well-pleaded factual allegations as true, but they do not accept legal conclusions couched as factual assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, the Court may consider not only the face of the pleading, but also documents expressly referenced in the pleading, central to the claims, and not

disputed in authenticity. *County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). That principle applies here. Devcoda expressly references Etsy's "Seller Policies, Community Guidelines, and Prohibited Conduct" in paragraph 26 and alleges that Etsy removed its listings "pursuant to Etsy's Intellectual Property Policy" in paragraph 44. ECF No. 7 ¶¶ 26, 44. The Etsy Terms and Intellectual Property Policy are therefore properly before the Court on this motion.

The Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___ (2026)(slip opinion), is instructive here, even though it arose in the distinct context of contributory copyright liability asserted against an internet service provider. The legal point relevant to this motion is narrower and important. The Supreme Court held that secondary copyright liability may not be expanded beyond recognized categories, that mere knowledge of infringement or failure to take greater action against it is insufficient to establish liability, and that the DMCA safe-harbor provisions do not create liability or permit wrongdoing to be inferred from a party's conduct. *Id*. Rather, § 512 operates only as a defense, and failure to satisfy safe harbor "shall not bear adversely" on a defense that the conduct at issue is noninfringing. *Cox Communications*, 607 U.S. ___, slip op. at 6–15. TGN relies on *Cox* only for those legal principles. Devcoda's counterclaims, by contrast, attempt to treat TGN's use of the DMCA and Etsy's platform reporting procedures as itself wrongful conduct. *Cox* confirms that such an approach is legally unsound.

III. **Relevant Allegations of the Counterclaims**

Because the legal defects in Devcoda's counterclaims are evident from the face of the pleading, it is useful to summarize the specific allegations to which the motion is directed. Devcoda alleges that it operates the "UniStreets" Etsy storefront and sells map-based products there. ECF

No. 7 ¶¶ 9–14. It alleges that TGN operates a competing Etsy storefront and website selling school-themed maps and related products. *Id*. ¶¶ 15–18. Devcoda alleges that in September and November 2025, representatives of TGN accused it of stealing intellectual property and threatened further action. *Id*. ¶¶ 19–29. It then alleges that on December 23 and 24, 2025, TGN submitted two DMCA takedown notices to Etsy asserting infringement of seven identified registrations. *Id*. ¶¶ 30–33. Devcoda alleges that Etsy removed listings "pursuant to Etsy's Intellectual Property Policy," that the removals affected more than one hundred listings, and that Devcoda later submitted DMCA counter-notices. *Id*. ¶¶ 44–49.

Counterclaim Count I, labeled "Declaratory Judgment of Non-Infringement of Asserted Copyright Registrations," incorporates paragraphs 1 through 56 and alleges that Devcoda is entitled to a declaration that it "has not violated any of TGN's intellectual property rights, including" the seven identified registrations. *Id*. ¶¶ 57–67. Counterclaim Count II, labeled "Tortious Interference with Contract," incorporates paragraphs 1 through 67 (including the entire prior Counterclaim Count I) and alleges that TGN intentionally and improperly interfered with Devcoda's contract with Etsy by "submitting DMCA takedown notices to Etsy.com" and accusing Devcoda of selling infringing products. *Id*. ¶¶ 68–81. Counterclaim Count III, labeled "Defamation," incorporates paragraphs 1 through 81 (including the entire prior Counterclaim Counts I and II) and alleges that TGN "published false statements to Etsy" by "submitting DMCA takedown notices to Etsy.com." *Id*. ¶¶ 82–97. These allegations are sufficient to show that all three counterclaims arise from the same underlying communications and must stand or fall as a matter of law on the status of those communications and the adequacy of Devcoda's pleading.

## IV. **Counterclaim Count I is Duplicative, Does Not Present an Independent Controversy, and Does Not Warrant The Exercise of Declaratory Judgment Jurisdiction**

Counterclaim Count I is not a proper declaratory judgment claim. It is the inverse of TGN's infringement claims, it duplicates Devcoda's own affirmative defenses, and it attempts to expand itself beyond the asserted copyrights through an open-ended catch-all phrase that is unsupported by any factual allegations.

The clearest indication that Counterclaim Count I is duplicative appears in Devcoda's own Answer to TGN's Complaint. In its First Affirmative Defense, Devcoda alleges that its accused Etsy listings "do not infringe any copyrighted work, including Copyright Registration Nos. VA0002120688, VA0002129580, VA0002128494, VA0002129582, VA0002236944, VA0002128781, and VA0002128495." *Id*. That affirmative defense is the same position reasserted in Counterclaim Count I. The counterclaim does not identify any additional conduct, any separate controversy, or any distinct theory of relief. It seeks the same result Devcoda would obtain if it prevails on TGN's claims and on its First Affirmative Defense: a determination that the accused products do not infringe the asserted registrations.

That duplication matters because the Declaratory Judgment Act does not exist to permit a defendant to litigate the same issue twice, once as a defense and again as an affirmative claim. Counterclaim Count I is framed as "Declaratory Judgment of Non-Infringement of Asserted Copyright Registrations." *Id* at p.37. The heading itself confines the counterclaim to the asserted copyright registrations. The factual allegations supporting that count likewise concern only the same seven copyrights that are already at issue in the Complaint. *Id* at ¶¶ 57–67. TGN's infringement claims will necessarily determine whether Devcoda copied protectable expression, whether any substantial similarity exists, and whether liability attaches. Counterclaim Count I simply asks the Court to say "no" to those same questions in declaratory form.

The redundancy here is not merely conceptual; it is complete. Devcoda's First Affirmative

Defense and Counterclaim Count I are coextensive in every operative respect. Both address the same accused listings, the same seven copyright registrations, and the same legal issue, namely whether Devcoda's products/listings infringe TGN's asserted copyrights. There is no scenario in which Devcoda could prevail on its First Affirmative Defense yet fail on Counterclaim Count I, or vice versa. The counterclaim therefore has no independent operative effect. It does not expand the controversy, introduce new facts, or seek distinct relief. It simply repackages an existing defense as a declaratory claim. That is not a proper use of the Declaratory Judgment Act.

Other courts have dismissed counterclaims of that sort because they are "simply seek[ing] the opposite of the complaint" and "generate an independent piece of litigation out of issues that are already before the court." *Hard Lens Media, Inc. v. Chicago Corner, LLC*, No. 24-cv-00246, 2025 WL 1787520, at *2 (N.D. Ill. June 27, 2025)(quoting *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013)). That is the exact problem here. Counterclaim Count I does not identify any separate controversy that would remain if the infringement claims were dismissed. Nor does Devcoda allege any present dispute concerning any category of intellectual property beyond the asserted copyrights. It does not identify any trademarks, patents, trade secrets, or additional copyrighted works that are the subject of a live controversy. In the absence of such allegations, Devcoda's declaration as to "any intellectual property rights" would not resolve a concrete dispute but would instead constitute an advisory opinion. The Declaratory Judgment Act does not authorize such relief. Devcoda does not plead that any copyright is invalid, void, unenforceable, or procured by misrepresentation. It does not plead any dispute over ownership or licensing. It does not plead any issue that survives independent of infringement. Counterclaim Count I rises and falls entirely with the infringement claims already before the Court.

The count is also internally inconsistent and, to the extent it purports to extend beyond the asserted copyrights, is inadequately pled under Rule 8. Although the heading expressly limits the claim to the "Asserted Copyright Registrations," paragraph 67 seeks a declaration that Devcoda "has not violated any of TGN's intellectual property rights, including" the seven identified registrations. ECF No. 7 ¶ 67. That catch-all formulation cannot expand the scope of the claim beyond what the counterclaim actually pleads. The counterclaim contains no factual allegations regarding trademarks, patents, trade secrets, or any other category of intellectual property. Even within the context of copyright, it identifies no works other than the seven registrations asserted by TGN. A party cannot plead a specific dispute and then attempt to broaden it through the word "including" in the prayer for relief. Rule 8 requires factual allegations giving fair notice of the rights at issue and the conduct giving rise to a dispute. Counterclaim Count I provides that notice as to the asserted copyright registrations and fails to state any broader claim.

That same defect makes Counterclaim Count I improper even as a matter of declaratory judgment discretion. The Declaratory Judgment Act is discretionary, not mandatory. Where a declaration would neither settle anything beyond the coercive claims already before the Court nor clarify any legal relationship not already in dispute, this Court should properly decline to entertain it. Here, if TGN prevails, the Court will determine that Devcoda infringed the asserted registrations. If Devcoda prevails, the Court will determine that it did not. Either way, the legal relationship of the parties as to those works will be resolved without Counterclaim Count I. Allowing the counterclaim to proceed would only multiply issues, duplicate arguments, and complicate the pleadings for no useful purpose. For all of these reasons, Counterclaim Count I should be dismissed.

**V. Count II -Devcoda Does Not Plausibly Allege a Breach Nor Improper Interference**

Counterclaim Count II fails on the elements and on the legal status of the conduct alleged. Under Wyoming law, tortious interference with contract requires "(1) the existence of the contract; (2) the defendant's knowledge; (3) intentional and improper interference inducing or causing a breach; and (4) resulting damages." *First Wyoming Bank v. Mudge*, 748 P.2d 713, 715 (Wyo. 1988); see also *Estenbroek v. Fraternit*y, No. 22-cv-00156-SWS, 2023 WL 5533307, at *16 (D. Wyo. Aug. 28, 2023). Devcoda's allegations do not satisfy at least the third element because they do not plausibly allege either a breach or "improper" interference.

Devcoda alleges that it had a contractual relationship with Etsy and that TGN interfered with that relationship by submitting DMCA takedown notices and telling Etsy that Devcoda was selling infringing products. ECF No. 7 ¶¶ 69–71. It further alleges that Etsy removed listings and suspended selling privileges. *Id* at ¶¶ 44–49, 76–79. What Devcoda does not allege is that Etsy thereby breached its contract with Devcoda.

The omission is more fundamental still. Devcoda does not identify a single contractual provision that Etsy allegedly breached. It does not plead any term of the Etsy Terms of Use, Intellectual Property Policy, or any seller agreement that was violated. Instead, it offers only the conclusory assertion that interference occurred. Under *Twombly* and *Iqbal*, a plaintiff must plead facts supporting each element of its claim. The absence of any identified contractual obligation, and any alleged breach of that obligation, renders Counterclaim Count II insufficient as a matter of law. That omission is not accidental as it reflects the reality that Etsy's own governing terms expressly authorize the very actions Devcoda complains about.

The Court may consider Etsy's governing terms here because Devcoda itself expressly references them. *GFF Corp. v. Assoc.'d Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)("… he document is referred to in the complaint *and* is central to the plaintiff's claim, a

defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Devcoda alleges that it responded to TGN's accusations by "enumerat[ing] the violations of Etsy's Seller Policies, Community Guidelines, and Prohibited Conduct." ECF No. 7 ¶ 26. It further alleges that Etsy removed listings "pursuant to Etsy's Intellectual Property Policy (available at https://www.etsy.com/legal/ip-dmca/)." *Id* at ¶ 44. That "DMCA Notice Requirements" page, expressly references the Etsy Intellectual Property Policy. See Exhibit A[1]. The referenced Etsy materials are thus central to the counterclaims and properly considered on this motion. By alleging that Etsy acted "pursuant to Etsy's Intellectual Property Policy," Devcoda admits that Etsy acted within the scope of its contractual rights. ECF No. 7 at ¶ 44. A party cannot state a claim for tortious interference by alleging that the third party did exactly what its governing contract permits. On its face, the counterclaim pleads conduct consistent with contractual authorization, not breach. Devcoda's admission is fatal to the claim.

Those Etsy materials foreclose Devcoda's breach theory. A review of the actual terms and policies by Etsy are important here. Etsy's Intellectual Property Policy expressly states that it "is a part of our Terms of Use." See Exhibit B attached[2]. It provides that Etsy "reserves the right to disable any listing, shop, or account that we believe violates our Terms of Use, including this Intellectual Property Policy or our Prohibited Items Policy," and that Etsy "will remove material cited for **alleged intellectual property infringement when provided with a report that complies with our policies**." *Id*. (emphasis added). Etsy also explains that it "can't speak on behalf of intellectual property owners," is "not in a position to offer legal advice or make legal determinations whether a shop's content infringes someone else's intellectual property," and

---

[1] https://www.etsy.com/legal/ip-dmca last accessed on March 31, 2026
[2] A composite exhibit consisting of Etsy's relevant Terms and IP policies, available publicly at https://www.etsy.com/legal/terms-of-use, https://www.etsy.com/legal/section/sellers, and https://www.etsy.com/legal/ip/ all last accessed on March 29, 2026.

instead administers the process triggered by a compliant report. *Id*.

On Devcoda's own allegations, then, Etsy did exactly what Etsy told sellers it could and would do. It acted "pursuant to" its Intellectual Property Policy. ECF No. 7 ¶ 44. Where the alleged third-party conduct is expressly authorized under the governing terms of the relationship, there is no breach as a matter of law. The causal chain alleged in the counterclaim further underscores the defect. Devcoda alleges that TGN submitted DMCA notices and that Etsy, in response, removed listings pursuant to its own policy. ECF No. 7 ¶¶ 30–33, 44–49. Those allegations describe independent action by Etsy in accordance with its contractual framework, not conduct induced by TGN in breach of that framework. Where the third party's actions are taken pursuant to its own policies, the element of induced breach is not plausibly alleged.

The count also fails because the only alleged "improper" interference is the submission of copyright complaints through Etsy's reporting system and the DMCA process. ECF No. 7 ¶¶ 71, 75, 78. That is not "improper" conduct but is instead the recognized mechanism for enforcing copyrights online. The law does not permit a party to convert routine rights-enforcement conduct into tortious interference merely by attaching the adjective "false" to the complaint. Devcoda attempts to supply "impropriety" by alleging that TGN's infringement assertions were "false." ECF No. 7 ¶ 71. But that allegation is a legal conclusion, not a well-pleaded fact. The counterclaim offers no factual basis demonstrating falsity beyond Devcoda's assertion that its products do not infringe. A conclusory allegation that a rights holder's infringement claim is "false" does not transform lawful copyright enforcement into improper interference. Under *Twombly* and *Iqbal*, such labels and conclusions are insufficient.

The recent Supreme Court decision in *Cox Communications* further confirms that Devcoda cannot convert copyright-enforcement conduct into "improper" interference merely by

characterizing it as false or insufficiently justified. *Cox* involved contributory copyright liability asserted against an internet service provider that continued to provide internet access to subscribers associated with infringement. 607 U.S. ___, slip op. at 1–5. *Cox* did not involve tort claims arising from DMCA notices to an online marketplace. But the legal determination the Supreme Court made is instructive here. The Supreme Court held that copyright liability cannot be expanded based on mere knowledge of infringement or insufficient action to prevent it, and it rejected the use of § 512 as a mechanism for bootstrapping liability where none otherwise exists. *Id*. at 6–10, 10–15. TGN does not contend that *Cox* factually controls these state-law counterclaims, rather, *Cox* is instructive because it rejects the same basic move Devcoda attempts here, using the existence or operation of the DMCA framework to infer wrongful conduct and thereby create liability.

That reasoning matters here because Devcoda's tortious interference claim rests entirely on TGN's submission of infringement complaints through Etsy's DMCA and intellectual-property reporting procedures. ECF No. 7 ¶¶ 71, 75. Those procedures are expressly contemplated by Etsy's governing policies, which provide that Etsy "will remove material cited for alleged intellectual property infringement when provided with a report that complies with our policies." See Exhibit B. *Cox* does not hold that all DMCA-related conduct is immune from any possible state-law claim, and TGN does not contend otherwise. The point is narrower, namely the existence and use of the DMCA framework do not themselves create wrongful conduct, and they cannot be used to infer it. Devcoda alleges no independent wrongful act apart from TGN's use of those reporting procedures. That is insufficient to satisfy the "improper interference" element.

In *Sunny Factory, LLC v. Chen*, the plaintiff alleged that the defendants had filed false DMCA notices with Amazon, causing listings to be removed, and asserted tort claims arising from that conduct. *Sunny Factory, LLC v. Chen* No. 21 C 3648, 2022 WL 742429, at *3–4 (N.D. Ill.

Mar. 11, 2022). The court in that case dismissed the tort claims. It held that statements made during the notice-and-takedown process were privileged because the process anticipates potential judicial proceedings, and it held that the plaintiff had not sufficiently alleged facts amounting to malice that would overcome the privilege. *Id*. The same reasoning applies here. TGN's alleged conduct consists of using Etsy's report-and-removal system and the DMCA framework to assert copyright rights. Etsy's seller materials confirm that this framework includes counter-notices and possible litigation. (See Exhibit B).

*Hard Lens Media* likewise rejected efforts to repackage platform-based copyright complaints as tortious conduct. There, the court dismissed claims based on copyright complaints made to online platforms, concluding that the alleged interference was privileged copyright enforcement and not a basis for tort liability. 2025 WL 1787520, at *3–4. The same conclusion follows here. The only alleged conduct is TGN's use of Etsy's reporting process to assert claimed infringement.

Even if the Court were to treat the privilege applicable here as qualified rather than absolute, Counterclaim Count II still fails because Devcoda does not plausibly allege malice or bad faith sufficient to overcome the privilege. Devcoda alleges, in conclusory form, that TGN "knew or should have known" its accusations were false and acted "maliciously." ECF No. 7 ¶¶ 77–78. Those are legal conclusions. The counterclaim does not plead facts showing that TGN subjectively knew its infringement position was false when it submitted the notices. It pleads only that TGN accused Devcoda of infringement, warned it to stop, and then submitted DMCA complaints. ECF No. 7 ¶¶ 19–33. Those allegations are entirely consistent with a rights holder's genuine belief that infringement is occurring.

Because Devcoda does not plausibly allege a breach, does not plausibly allege "improper"

interference, and does not plausibly allege facts sufficient to overcome the privilege protecting copyright enforcement communications, Count II should be dismissed.

VI. **Counterclaim Count III Fails for Multiple Reasons**

Counterclaim Count III fails for many of the same reasons as Counterclaim Count II and for additional reasons unique to defamation claims. Devcoda alleges that TGN "published false statements to Etsy regarding Devcoda's alleged theft and infringement of certain intellectual property, including reporting to Etsy by submitting DMCA takedown notices to Etsy.com that Devcoda infringed the Asserted Copyright Registrations." ECF No. 7 ¶ 83. It alleges that those statements were false, harmed Devcoda's reputation and sales, and were not privileged. *Id* at ¶¶ 84, 87, 89–90. However, Counterclaim Count III is based on the same alleged conduct as Counterclaim Count II. Both claims arise entirely from TGN's submission of DMCA notices and communications to Etsy asserting infringement. Compare ECF No. 7 ¶¶ 71, 75 with ¶ 83. The defamation claim does not identify any additional statements or distinct conduct. It therefore rises or falls with the same allegations and is subject to the same deficiencies, including privilege and the absence of well-pleaded facts establishing falsity or malice.

As pled, the alleged statements are the same DMCA and platform-reporting communications at issue in Counterclaim Count II. They were not made to the public. They were made to Etsy, the platform administrator responsible for receiving and acting on copyright complaints under its policies. Etsy's Intellectual Property Policy confirms that Etsy administers a report-and-removal process, not a merits adjudication process. (Exhibit B). It also confirms that a compliant report will trigger removal of cited material. *Id*.

Those communications are privileged, or at minimum qualifiedly privileged. *Sunny Factory* is directly on point in that respect. There, the court held that statements to Amazon during

the notice-and-takedown process were privileged because they were communications preliminary to a proposed judicial proceeding and arose in a process designed to lead, if necessary, to litigation. See *Sunny Factory* 2022 WL 742429, at *3. Etsy's materials reflect the same structure here. Sellers are told how to respond to infringement notices, including by submitting DMCA counter-notices, and Etsy explains the next steps that can follow.

Devcoda's conclusory allegation that the statements "are not protected by any privilege" is not enough to avoid dismissal. ECF No. 7 ¶ 89. If the privilege is treated as qualified rather than absolute, Devcoda must still plead facts making it plausible that TGN acted with knowledge of falsity or reckless disregard for the truth. It does not. Counterclaim Paragraphs 88 through 90 simply assert that TGN acted with malice or reckless disregard. Those are conclusions, not facts. Devcoda pleads no facts showing that TGN knew its position was false, no contradictory internal communications, no admissions, and no specific circumstances that would support a plausible inference of bad faith.

The alleged "falsity" on which Counterclaim Count III depends also underscores the defect. Devcoda says the statements were false because its accused products do not infringe TGN's rights, were independently created, and are not substantially similar to protectable expression. ECF No. 7 ¶¶ 58–62, 84–85. That is simply Devcoda's non-infringement defense restated as a tort theory. It does not identify some independent factual falsehood apart from the merits dispute over infringement. If that were enough, every copyright dispute preceded by a DMCA takedown notice would generate a defamation counterclaim. The law does not permit routine recasting of infringement disputes into defamation claims. The counterclaim's own allegations confirm that the asserted "falsity" is nothing more than a disagreement over infringement. Devcoda alleges that its products are original and not substantially similar to protectable expression. ECF No. 7 ¶¶ 58–

62, 84–85. Those are legal conclusions directed to the merits of TGN's copyright claims. They do not identify an independent false statement of fact. A party's position in a copyright dispute does not become defamatory simply because the opposing party disagrees with it.

The Supreme Court's reasoning in *Cox Communications* is likewise instructive here, though the factual setting was different. *Cox* did not concern defamation or takedown notices to a marketplace platform. It concerned whether an internet service provider could be held contributorily liable for continuing to supply internet access to subscribers associated with infringement. *Cox* 607 U.S. ___, slip op. at 1–5. The legal principle relevant here is that copyright-related liability may not be expanded on the basis of mere participation in a statutory enforcement framework, mere knowledge of alleged infringement, or mere disagreement over whether infringement occurred. *Id*. at 6–10. Devcoda's defamation claim depends on precisely that sort of expansion. Devcoda attempts to transform TGN's assertion of infringement through Etsy's reporting procedures into an independent tort, even though the alleged falsity is nothing more than Devcoda's disagreement with TGN's copyright position. *Cox* confirms that such a theory cannot be bootstrapped from the operation of the DMCA framework itself.

Allowing those communications to serve as the basis for defamation liability would improperly convert routine copyright enforcement into tort exposure, a result inconsistent with the Supreme Court's directive that courts not expand liability beyond established categories grounded in intent and culpability. *Id*. Devcoda's allegations do not plausibly plead such intent. Instead, they reflect nothing more than a disagreement over whether infringement occurred, which is the precise issue to be resolved through TGN's claims and Devcoda's defenses, not through a separate tort claim.

Counterclaim Count III is also deficient as to publication and harm. Devcoda identifies

Etsy as the recipient of the statements. ECF No. 7 ¶ 83. It does not allege that TGN published any statement to customers or the general public. Although Devcoda asserts that "Etsy's and Devcoda's customers" avoided purchases, ECF No. 7 ¶ 87, it pleads no facts showing any publication to customers or republication by Etsy. That deficiency reinforces that this claim is really about the operational consequences of Etsy's takedown process, not about an independent defamatory publication. The pleading confirms that the alleged statements were made only to Etsy. ECF No. 7 ¶ 83. Devcoda does not allege that TGN communicated any statement to customers or to the public, nor does it allege that Etsy republished any statement to third parties. The assertion that customers declined to purchase products is not tied to any identified publication. Absent factual allegations of communication to a third party, the publication element is not satisfied. For all of these reasons, Counterclaim Count III should be dismissed.

VII. **Conclusion**

Devcoda's counterclaims fail as a matter of law. Counterclaim Count I is duplicative of the Complaint and of Devcoda's own First Affirmative Defense, and it does not present an independent controversy warranting declaratory relief. Counterclaim Count II fails because Devcoda does not plausibly allege a breach of contract and challenges only Etsy-authorized, DMCA-contemplated, and privileged copyright enforcement activity. Counterclaim Count III fails because it is based on the same communications, does not plausibly allege facts overcoming privilege, and merely repackages the underlying infringement dispute as defamation. For these reasons, TGN respectfully requests that the Court dismiss Counterclaim Counts I, II, and III

Dated: March 31, 2026

Respectfully submitted,

By: */s/ Darren Spielman/*
DARREN J. SPIELMAN, Esq.

Fla. Bar No. 10868
dspielman@conceptlaw.com
**THE CONCEPT LAW GROUP, P.A.**
6400 N. Andrews Ave., Suite 500
Fort Lauderdale, Florida 33309
Tel: 754.300.1500
Fax: 754.300.1501
*Attorney for Plaintiff*
and

Bradley L. Booke #5-1676
LAW OFFICE OF BRADLEY L. BOOKE
Box 13160
Jackson, Wyoming 83001
702-241-1631
866-297-4863 fax
brad.booke@lawbooke.com

*Attorney for Plaintiff*