IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THAT'S GREAT NEWS, LLC,<br><br>Plaintiff /<br>Counterclaim Defendant,<br>v.<br><br>DEVCODA LLC d/b/a UNISTREETS,<br><br>Defendant /<br>Counterclaim Plaintiff. | C.A. No. 1:26-cv-00038-SWS-SPK |

**DEVCODA'S MEMORANDUM OF LAW IN OPPOSITION TO**
**TGN'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**


OF COUNSEL:

John D. Simmons*
Dennis J. Butler*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Delaware Corporate Center
1 Righter Parkway, Suite 220
Wilmington, DE 19803
Tel: (302) 394-6030
Fax: (215) 965-1331
jsimmons@panitchlaw.com
dbutler@panitchlaw.com
* *Admitted pro hac vice*

Julianna L. Hunt*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 965-1330
Fax: (215) 965-1331
jhunt@panitchlaw.com
* *Admitted pro hac vice*

Paula A. Fleck (WY #6-2660)
HOLLAND & HART LLP
645 South Cache Street, Suite 100
P.O. Box 68
Jackson, WY 83001
Tel: (307) 739-9741
Fax: (307) 739-9744
pfleck@hollandhart.com

*Attorneys for Defendant and Counterclaim-Plaintiff, Devcoda LLC d/b/a UniStreets*


Dated: April 14, 2026

# TABLE OF CONTENTS


I. NATURE AND STATE OF THE PROCEEDINGS ........ 1

II. SUMMARY OF THE ARGUMENT ........ 1

III. STATEMENT OF FACTS ........ 2

IV. ARGUMENT ........ 5

A. Legal Standard ........ 5

B. Devcoda's Declaratory Judgment Counterclaim Establishes an Independent Controversy Separate and Apart from TGN's Original Claims, Thus Serving a "Useful Purpose" and Rendering Dismissal Pursuant to 12(b)(6) Improper ........ 6

C. Counterclaim Count II is Plausible on its Face and Therefore Survives Dismissal at the Rule 12 Pleading Stage ........ 11

1. TGN Misinterprets the Pleading Standard for Tortious Interference with Contract Claims ........ 11

2. Devcoda's Well-Pled Facts Are Sufficient to Establish the Facial Plausibility of the "Intentional and Improper Interference" Element ........ 13

3. TGN Cannot Rely on Any Litigation Privilege to Shield Its DMCA Takedown Notices From Tort Liability ........ 17

D. Construing the Facts in the Light Most Favorable to Devcoda, A Claim For Defamation Has Been Stated and Dismissal is Improper ........ 19

1. Devcoda Sufficiently Pled the Publication of a False Statement of Fact ........ 19

2. TGN's False Statements of Copyright Infringement Communicated to Etsy Are Not Privileged ........ 22

V. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm Funding Assocs., LLC v. Sec. Prods. Co., LLC*,
No. 1:14-cv-0128, 2015 U.S. Dist. LEXIS 192631 (D. Wyo. Feb. 13, 2015) ........................ 14

*Alcorn v. Labarge*,
No. 17-cv-108, 2018 U.S. Dist. LEXIS 242003 (D. Wyo. Aug. 17, 2018) ................ 18, 20, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 5, 13

*Baldwin v. Harper*,
No. 20-cv-160, 2021 U.S. Dist. LEXIS 254739 (D. Wyo. Dec. 16, 2021) ........................ 14

*Best of the W. Productions, LLC v. Cunningham*,
No. 20-cv-2, 2020 U.S. Dist. LEXIS 255369 (D. Wyo. Oct. 30, 2020) ........................ 5, 13

*Bolsa Res., Inc. v. Martin Res., Inc.*,
No. 11-cv-01293, 2014 U.S. Dist. LEXIS 138369 (D. Colo. Aug. 28, 2014) ........................ 15

*In re Borges*,
485 B.R. 743 (Bankr. D.N.M. 2012), *aff'd*, 510 B.R. 306 (B.A.P. 10th Cir. 2014) ................ 17

*Brereton v. Bountiful City Corp.*,
434 F.3d 1213 (10th Cir. 2006) ........................................................................ 23

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
No. 24-171, 607 U.S. __ (2026) ........................................................................ 16, 23

*D & D Assocs. v. Bd. of Educ.*,
No. 03-1026, 2007 U.S. Dist. LEXIS 93867 (D.N.J. Dec. 20, 2007) ........................ 18, 22

*Dias v. City & Cty. of Denver*,
567 F.3d 1169 (10th Cir. 2009) ........................................................................ 6

*Dworkin v. L.F.P., Inc.*,
839 P.2d 903 (Wyo. 1992) ........................................................................ 20

*Dynan v. Rocky Mountain Fed. Sav. & Loan*,
792 P.2d 631 (Wyo. 1990) ........................................................................ 11

*Hartford Life & Accident Ins. Co. v. Jones-Atchison*,
No. 20-6135, 2021 U.S. App. LEXIS 28309 (10th Cir. Sept. 20, 2021) ........................ 5, 10

*Hotaling & Co., LLC v. LY Berditchev Corp.*,
No. 20-cv-16366, 2022 U.S. Dist. LEXIS 70556 (D.N.J. Apr. 18, 2022)........................18, 22

*King v. Am. Fish Attractor & Habitat, LLC*,
No. 5:16-cv-5128, 2016 U.S. Dist. LEXIS 120531 (W.D. Ark. Sept. 7, 2016) ....................8, 9

*Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*,
No. 12-cv-3012, 2016 U.S Dist. LEXIS 185150 (D. Colo. Jul. 13, 2016) ...........................8, 9

*Klinger v. Conan Doyle Estate, Ltd.*,
755 F.3d 496 (7th Cir. 2014) ...................................................................................15

*Lewis v. Francis*,
577 P.3d 433 (Wyo. 2025)........................................................................................21

*Lombardo v. Seuss Enters., L.P.*,
No. 16-cv-9974, 2017 U.S. Dist. LEXIS 64854 (S.D.N.Y. Apr. 7, 2017) .............................17

*Malibu Media, LLC v. Doe*,
No. 15-cv-04441, 2016 U.S. Dist. LEXIS 80003 (N.D. Cal. Jun. 20, 2016)........................8, 9

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*,
730 F. Supp. 3d 740 (N.D. Ill. 2024) .....................................................................15, 16, 23

*President & Fellows of Harvard Coll. v. Elmore*,
222 F. Supp. 3d 1050 (D.N.M. 2016) ........................................................................17, 19

*Price v. Sorrell*,
784 P.2d 614 (Wyo. 1989)........................................................................................11

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) .................................................................................6

*Santa Fe Goldworks, Inc. v. Bella Jewelry, LLC*,
No. 23-602, 2025 U.S. Dist. LEXIS 61416 (D.N.M. Mar. 31, 2025)...............................6, 7, 8

*Skratch Labs LLC v. Delivery Native, Inc.*,
No. 20-cv-1565, 2021 U.S. Dist. LEXIS 71892 (D. Colo. Apr. 14, 2021)........................5, 6, 7

*Spence v. Flynt*,
816 P.2d 771 (Wyo. 1991)........................................................................................20

*State Farm Fire & Casualty Co. v. Mhoon*,
31 F.3d 979 (10th Cir. 1994) ...................................................................................6, 11

*Surefoot LC v. Sure Foot Corp.*,
531 F.3d 1236 (10th Cir. 2008) .................................................................................6

*The Sunny Factory, LLC v. Haoyi Chen*,
No. 21-cv-3648, 2022 U.S. Dist. LEXIS 43969 (N.D. Ill. Mar. 11, 2022) .......................17, 22

*Thomas v. Rosenberger*,
341 P.3d 390 (Wyo. 2015).....................................................................................20

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)...............................................................................................6

*Wyo. Bevs., Inc. v. Core-Mark Int'l, Inc.*
No. 17-cv-116, 2018 U.S. Dist. LEXIS 230106 (D. Wyo. Jan. 4, 2018) ..........................11, 14

*Wyo. Corporate Servs. v. CNBC, LLC*,
32 F. Supp. 3d 1177 (D. Wyo. 2014).....................................................................20

**Statutes**

17 U.S.C. § 505 (Copyright Act of 1976)...................................................................9

17 U.S.C. §§ 512, 1201–1205, 1301–1332; 28 U.S.C. § 4001
(Digital Millenium Copyright Act).............................................................................3

28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act)......................................................6

**Other Authorities**

*Etsy Terms of Use*, Etsy, https://www.etsy.com/legal/terms-of-use
(last visited Mar. 17, 2026) .................................................................................12

Fed. R. Civ. P. 9(b) ..................................................................................................21

Fed. R. Civ. P. 12(b)(6)...................................................................1, 5, 7, 10, 11, 13, 15, 23

Fed. R. Civ. P. 26(a)(1).................................................................................................1

Fed. R. Civ. P. 41(a)(2)..........................................................................................7, 8, 9

Restatement (Second) of Torts § 558 (1977).............................................................20

Restatement (Second) of Torts § 573 cmt. e (1977) ...................................................20

Restatement (Second) of Torts § 577(b) (1977) .........................................................21

Restatement (Second) of Torts § 596 cmt.a (1977) ......................................................18

Restatement (Second) of Torts § 767 (1977)..............................................................14

## I. NATURE AND STATE OF THE PROCEEDINGS

On January 28, 2026, Plaintiff and Counterclaim Defendant That's Great News, LLC ("Plaintiff," or "TGN") filed a Complaint against Devcoda asserting copyright infringement. (ECF 1). On March 10, 2026, following an Order (ECF 6) extending the deadline to answer or respond to TGN's Complaint, Devcoda filed its Answer to TGN's Complaint with Affirmative Defenses and Counterclaims. (ECF 7). Devcoda served its Rule 26(a)(1) Initial Disclosures on March 26, 2026. The Parties have not exchanged any written discovery requests, nor is there a Scheduling Order setting forth deadlines in this case.

On March 31, 2026, TGN filed a Motion to Dismiss Counts I, II, and III of Devcoda's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF 16-0) and a Memorandum of Law in support thereof. (ECF 16-1). Devcoda now submits its Memorandum of Law in Opposition to TGN's Motion to Dismiss Counterclaim Counts I, II, and III.

## II. SUMMARY OF THE ARGUMENT

Devcoda's counterclaims for declaratory judgment of non-infringement of copyright (Counterclaim Count I), tortious interference with contract (Counterclaim Count II), and defamation (Counterclaim Count III) should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

First, Devcoda pled facts sufficient to meet the required elements to state a claim for declaratory judgment of non-infringement under the Declaratory Judgment Act with underlying facts to support each of the elements for Counterclaim Count I. Counterclaim Count I asserts an independent case or controversy – Devcoda's entitlement to an award of attorneys' fees and costs – which would remain viable after dismissal without prejudice of TGN's claims of copyright infringement, thus rendering the declaratory judgment counterclaim neither duplicative nor

redundant of TGN's claims. Further, because Counterclaim Count I would serve the useful purpose of protecting Devcoda's interests in obtaining declaratory judgment of non-liability to alleviate forthcoming uncertainty regarding the parties' respective rights and duties as competitors in the e-commerce space (*e.g.*, on Etsy.com) should TGN voluntarily withdraw its original copyright infringement claims, dismissal of Counterclaim Count I is inappropriate.

Second, Devcoda pled facts sufficient to meet the requirements to support each element of Counterclaim Count II for tortious interference with contract, particularly the third element with respect to TGN's intentional and improper interference inducing or causing a breach or termination of Devcoda's contractual relationship with Etsy. TGN's self-professed reliance on a litigation privilege to insulate its DMCA takedown notices from liability is of no moment, as any conditional privilege extending to its false claims of copyright infringement made during the notice-and-takedown period was destroyed by TGN's improper motive, malice, and bad faith.

Third, Devcoda pled facts sufficient to meet the requirements to support each element of Counterclaim Count III for defamation in addition to those necessary for defamation *per se* under Wyoming law, as TGN's defamatory statements are incompatible with Devcoda's business. The well-pleaded facts of Devcoda's defamation counterclaim are likewise sufficient to overcome any litigation privilege asserted by TGN, thus demonstrating the unprivileged nature of the DMCA takedown notices and further rendering dismissal of Counterclaim Count III improper.

## III. STATEMENT OF FACTS

Devcoda owns and operates the UniStreets Etsy storefront and is in the business of selling wall art for college campus legends and street icons. (ECF 7, ¶ 9). Devcoda's college and university street maps offered for sale on the UniStreets Etsy storefront (hereinafter, "Devcoda's college street maps") are hand-drawn and independently designed and created by

Devcoda, incorporating unique artistic features and stylistic elements which contribute to the overall appeal of these visual works. *Id.*, ¶¶ 12-14.

TGN operates the SchoolStreetPosters Etsy storefront, selling its own street maps of college towns and cities. *Id.*, ¶¶ 15-16. From September 2025 to December 2025, TGN (acting through the SchoolStreetPosters Etsy seller) engaged in harassment, intimidation, and bad faith anti-competitive conduct toward Devcoda, falsely accusing the UniStreets storefront of stealing intellectual property and selling copyrighted material. *Id.*, ¶¶ 19-29. The repeated, threatening conduct exhibited by TGN toward Devcoda on and off the Etsy.com platform was so severe that Devcoda even submitted a formal complaint letter to Etsy. *Id.*, ¶¶ 25-28. TGN's contentious, adversarial targeting of Devcoda came to a head on December 23, 2025 and December 24, 2025 when TGN submitted Digital Millenium Copyright Act ("DMCA") takedown notices to Etsy. *Id.*, ¶ 30. By submitting the notices, TGN asserted Devcoda's infringement of seven U.S. Copyright Registrations. *Id.*, ¶ 31-33. Etsy subsequently removed over one hundred active listings from the UniStreets Etsy storefront and indefinitely suspended Devcoda's selling abilities. *Id.*, ¶¶ 44-48. TGN's knowingly false claims of copyright infringement were made with intent to ensure UniStreets' suspension and the removal of its listings. *Id.*, ¶¶ 42-43, 54-55.

TGN commenced this action against Devcoda, alleging copyright infringement of seven U.S. Copyright Registrations (hereinafter, "the Asserted Copyright Registrations"). (ECF 1, ¶¶ 31-163). Devcoda responded in its Answer, asserting several Affirmative Defenses, including non-infringement and invalidity of the Asserted Copyright Registrations, fair use, and unclean hands among others. (ECF 7, 22-25). Devcoda further asserted counterclaims for declaratory judgment of non-infringement, tortious interference with contract, and defamation. *Id.*, ¶¶ 57-97.

With respect to Counterclaim I, Devcoda alleges that it "is entitled to a declaratory judgment that it has not violated ***any*** of TGN's intellectual property rights, including Copyright Registrations Nos. VA0002120688, VA0002129580, VA0002128494, VA0002129582, VA0002236944, VA0002128781, and VA0002128495, and is further entitled to actual damages and ***attorneys' fees and costs***." *Id.*, ¶ 67 (emphasis added). Rather than confine this declaratory action to the seven Etsy listing numbers and copyrighted works identified in TGN's Complaint (ECF 1, ¶¶ 12, 16), Devcoda attests to the independent design, creation, and originality of *all* of its college street maps, thereby seeking a judgment of non-infringement with respect to not only the Asserted Copyright Registrations but also any additional copyright-related claim TGN might assert in the future based on these facts. Devcoda advances Counterclaim I one step further, claiming its entitlement to actual damages and attorneys' fees and costs. (ECF 7, ¶ 67).

In Counterclaim II, Devcoda alleges the existence of a valid contract between Devcoda and Etsy by virtue of Devcoda's operation of the UniStreets Etsy storefront, and TGN's knowledge thereof. *Id.*, ¶¶ 69-70. Devcoda further alleges TGN's intentional and improper interference with the Devcoda-Etsy contractual relationship by falsely claiming Devcoda's sale of allegedly infringing college street maps which thereafter prompted Etsy to suspend Devcoda's selling privileges and effectually terminate the contractual relationship. *Id.*, ¶¶ 71-78. Finally, Devcoda alleges the damage, namely loss of revenue, it sustained as a consequence of Etsy's termination of the contract upon suspending Devcoda's selling abilities. *Id.*, ¶ 79.

Regarding Counterclaim III, Devcoda alleges that TGN communicated to Etsy, a third party, false statements of fact that Devcoda infringed the Asserted Copyright Registrations. *Id.*, ¶ 83. Devcoda further alleges the unprivileged nature of these disparaging statements, which amount to defamation *per se*, and that TGN was at least negligent, though likely acted with

actual malice or reckless disregard for the truth of the statements contained in the DMCA takedown notices. *Id.*, ¶¶ 88-93. Finally, Devcoda alleges both special harm and injury suffered subsequent to Etsy's takedown and suspension of the UniStreets account. *Id.*, ¶¶ 94-96.

## IV. ARGUMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of a claim in a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hartford Life & Accident Ins. Co. v. Jones-Atchison*, No. 20-6135, 2021 U.S. App. LEXIS 28309, at *6-7 (10th Cir. Sept. 20, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Best of the W. Productions, LLC v. Cunningham*, No. 20-cv-2, 2020 U.S. Dist. LEXIS 255369, at *4 (D. Wyo. Oct. 30, 2020) ("To survive the motion, a claim must be plausible on its face.")). In determining whether a counterclaim is plausible on its face, courts "examine the elements of the particular claim and review whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cunningham*, 2020 U.S. Dist. LEXIS 255369, at *4-5.

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, courts are inclined to "accept all well-pleaded facts as true, view them in the light most favorable to the [non-moving party], and draw all reasonable inferences in their favor." *Hartford,* 2021 U.S. App. LEXIS 28309, at *7. A counterclaim plaintiff meets the requisite burden of proof by framing the counterclaim "'with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Skratch Labs LLC v. Delivery Native, Inc.*,

No. 20-cv-1565, 2021 U.S. Dist. LEXIS 71892, at *5 (D. Colo. Apr. 14, 2021) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

Courts in the Tenth Circuit acknowledge that granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Skratch,* 2021 U.S. Dist. LEXIS 71892, at *5 (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

**B. Devcoda's Declaratory Judgment Counterclaim Establishes an Independent Controversy Separate and Apart from TGN's Original Claims, Thus Serving a "Useful Purpose" and Rendering Dismissal Pursuant to 12(b)(6) Improper**

As an initial matter, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995). Under the Declaratory Judgment Act, "[f]ederal courts have the authority to 'declare the rights and other legal relations of any interested party seeking such declaration' when there is 'a case of actual controversy within its jurisdiction.'" *See Santa Fe Goldworks, Inc. v. Bella Jewelry, LLC*, No. 23-602, 2025 U.S. Dist. LEXIS 61416, at *5 (D.N.M. Mar. 31, 2025) (citing 28 U.S.C. § 2201(a)). In *Surefoot LC v. Sure Foot Corp*., the Tenth Circuit held that "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." 531 F.3d 1236, 1240 (10th Cir. 2008). Of these factors originally enunciated in *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), the district court must consider "whether [the declaratory action] would serve a useful purpose in clarifying the legal relations at issue." *See also Surefoot*, 531 F.3d at 1248. This factor is of particular relevance to counterclaims seeking a declaration of non-infringement of intellectual property. *See Santa Fe*, 2025 U.S. Dist. LEXIS 61416, at *26-27 ("courts

deciding whether to exercise their discretionary authority to hear a declaratory judgment counterclaim 'focus on whether the counterclaims serve any useful purpose'").

Courts in the Tenth Circuit (and beyond) have widely considered counterclaims seeking declaratory judgment as neither duplicative nor redundant where the claim "asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim." *See Skratch*, 2021 U.S. Dist. LEXIS 71892, at *9-10 (finding dismissal inappropriate where "Defendant has identified allegations which enlarge the scope of the dispute beyond what Plaintiff has pled," irrespective of the shared features between plaintiff's claims of trademark infringement and defendant's counterclaim seeking declaratory judgment of non-infringement); *Santa Fe*, 2025 U.S. Dist. LEXIS 61416, at *9-13 (declining to dismiss the declaratory judgment counterclaim under Rule 12(b)(6) because it "will serve the useful purpose of ensuring the controversy is adjudicated if Plaintiffs' claims fail to do so"). In contrast to a "mirror image" counterclaim which is generally the exact opposite of the original claim and is, therefore, devoid of any additional nuances or intricacies, a counterclaim seeking a declaratory judgment that "asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim" is not duplicative or redundant. *Id.* at *8-9, 13 (holding that defendants' declaratory judgment counterclaim did not qualify as a "mirror image" counterclaim and thus "should not be dismissed as merely duplicative of Plaintiffs' infringement claims").

The rationale behind the courts' reluctance to dismiss declaratory judgment counterclaims at the Rule 12 pleading stage in copyright cases is grounded in plaintiffs' ability and inclination to voluntarily dismiss their claims under Federal Rule of Civil Procedure 41(a)(2). *See id.* at *27-28 (explaining that "[c]ourts that have declined to dismiss counterclaims seeking a declaration of non-infringement in copyright cases recognize that it is not necessarily a foregone

conclusion that the plaintiff's infringement claims will be adjudicated on the merits"). Hence, district courts in the Tenth Circuit acknowledge that counterclaims seeking declaratory judgment of non-infringement of copyright "serve[] the useful and 'peculiarly important' purpose of allowing the defendant to fully litigate its defenses and secure a final judgment on the merits," should copyright plaintiffs seek voluntarily dismissal of their claims without prejudice. *Id*. at *28; *see also Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-3012, 2016 U.S Dist. LEXIS 185150, at *20 (D. Colo. Jul. 13, 2016) (holding that dismissal of defendant's counterclaim, even if redundant of plaintiff's claims, is improper since the declaratory judgment counterclaim serves to protect defendant's interests in obtaining "declaratory judgment of non-liability, to remove any uncertainty going forward regarding the parties' rights and duties," should plaintiff decide to withdraw the original claims).

In fact, declaratory judgment counterclaims seeking an award of attorneys' fees in the copyright context are widely considered to serve an independent purpose, regardless of their degree of duplication with respect to the original claims. *See e.g.*, *King v. Am. Fish Attractor & Habitat, LLC*, No. 5:16-cv-5128, 2016 U.S. Dist. LEXIS 120531, at *8 (W.D. Ark. Sept. 7, 2016) ("[t]hough both are, indeed, duplicative of King's patent and trademark infringement claims, they also serve an independent purpose. Namely, if King decides to voluntarily dismiss its claims without prejudice, the counterclaims allow American Fish to persist in resolving the dispute between the parties, and to potentially obtain an award for attorney's fees."); *Malibu Media, LLC v. Doe*, No. 15-cv-04441, 2016 U.S. Dist. LEXIS 80003, at *5 (N.D. Cal. Jun. 20, 2016) ("Absent defendant's counterclaim, if events reveal that this case is meritless, Malibu Media could voluntarily dismiss its affirmative claims without prejudice under Rule 41(a)(2),

seeking to avoid an award of attorney's fees. If, however, defendant's counterclaim remains alive, he will be able to press his counterclaim.").

Here, Devcoda's Counterclaim Count I – which not only asserts Devcoda's entitlement to an award of "actual damages and attorneys' fees and costs," but also seeks a declaration of non-infringement of certain intellectual property beyond the seven identified works (ECF 7, ¶ 67) – serves an independent, useful purpose rendering it unfit for dismissal at the Rule 12 pleading stage. Counterclaim Count I establishes an independent case or controversy, as it serves the distinct purpose of allowing Devcoda to fully adjudicate the underlying copyright issues, obtain a final judgment on the merits, and protect its interests in obtaining a declaratory judgment of non-liability, should TGN voluntarily withdraw its affirmative claims of copyright infringement without prejudice. Permitting Devcoda's declaratory judgment counterclaim to overcome TGN's motion to dismiss, thereby ensuring a final judgment as to non-infringement as needed to "remove any uncertainty going forward regarding the parties' rights and duties," is particularly important here considering that Devcoda and TGN conduct business in the same marketplace and operate competing Etsy storefronts. *See Centura*, 2016 U.S Dist. LEXIS 185150, at *20.

This same voluntary dismissal rationale supports that Counterclaim Count I presents an independent case or controversy, namely Devcoda's entitlement to an award for attorneys' fees pursuant to 17 U.S.C. § 505, which would likewise remain viable after TGN's dismissal of its original claims of copyright infringement. That is, if TGN decides to voluntarily dismiss Counts I to VII without prejudice, Counterclaim Count I allows Devcoda to potentially obtain an award for attorneys' fees. *See King,* 2016 U.S. Dist. LEXIS 120531, at *8; *Malibu*, 2016 U.S. Dist. LEXIS 80003, at *5. To dismiss Devcoda's declaratory judgment counterclaim at this stage would authorize TGN to avail itself of the Rule 41(a)(2) procedural mechanism in unjustly

seeking to avoid an award of attorneys' fees. Notwithstanding any alleged redundancy with respect to TGN's original claims, the declaratory judgment counterclaim operates to safeguard Devcoda's interests in and entitlement to an award for attorneys' fees and costs, thus rendering dismissal of Counterclaim Count I improper.

Finally, Counterclaim Count I expands the scope of the dispute beyond that which TGN has pled because Devcoda asserts that its college street maps do not infringe *any* of TGN's intellectual property rights – not just the seven Asserted Copyright Registrations. ECF 7, ¶ 67. By incorporating this "catch-all" language, Devcoda merely seeks to avoid an overly narrow reading of any forthcoming declaration of non-infringement (*i.e.*, one which excludes additional copyright-related claims that TGN might assert in an amended complaint with respect to Devcoda's college street maps), but does not intend to assert a freestanding controversy of unnamed, unidentified "trademarks, patents, [or] trade secrets." (ECF 16-1, 7). When deciding a Rule 12(b)(6) motion, this Court is inclined to view Counterclaim Count I in the light most favorable to Devcoda and draw all reasonable inferences in its favor. *See Hartford,* 2021 U.S. App. LEXIS 28309, at *7. Under this standard, Devcoda's catch-all formulation should be interpreted as seeking a declaration of non-infringement which corresponds, at a minimum, to the seven Asserted Copyright Registrations with the caveat that this Court may limit the scope of any eventual declaratory judgment *without* outright dismissing the counterclaim in its entirety.

Irrespective of any shared, duplicative features, Devcoda's counterclaim for declaratory judgment of non-infringement is neither coextensive with nor a "mirror image" of TGN's original claims, but rather serves an independent and useful purpose necessitating denial of TGN's motion to dismiss Counterclaim Count I pursuant to Rule 12(b)(6). Even if Counterclaim Count I is duplicative of TGN's claims, dismissal is not mandatory but entirely discretionary, and

this Court should apply its discretion in deciding to entertain Devcoda's claim arising under the Declaratory Judgment Act since it serves "a useful purpose in clarifying the legal relations at issue" underlying the instant copyright dispute. *See Mhoon*, 31 F.3d at 983.

### C. Counterclaim Count II is Plausible on its Face and Therefore Survives Dismissal at the Rule 12 Pleading Stage

#### 1. TGN Misinterprets the Pleading Standard for Tortious Interference with Contract Claims

TGN contests that Counterclaim Claim II fails to "identify a single contractual provision that Etsy allegedly breached." (ECF 16-1, 9). This framing misapprehends both Wyoming contract law and the Rule 12(b)(6) pleading standard as it relates to tortious interference claims.

To sustain a cause of action for tortious interference with contract in Wyoming, the following elements must be shown: "(1) [t]he existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach *or termination* of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disputed." *Wyo. Bevs., Inc. v. Core-Mark Int'l, Inc*. No. 17-cv-116, 2018 U.S. Dist. LEXIS 230106, at *15-16 (D. Wyo. Jan. 4, 2018) (emphasis added). Hence, under Wyoming contract law, the third element of a tortious interference with contract claim encompasses *termination* of the contractual relationship, not strictly a technical breach of any specific contractual provision. *Id.*; *see also Dynan v. Rocky Mountain Fed. Sav. & Loan*, 792 P.2d 631, 641 (Wyo. 1990); *Price v. Sorrell*, 784 P.2d 614, 615 (Wyo. 1989) (confirming that this third element is satisfied when "there has been an actual breach, failure to perform or termination of the contract allegedly interfered with").

In Counterclaim Count II, Devcoda alleges that Etsy "suspend[ed] Devcoda's ability to sell its college street maps on the Etsy.com e-commerce platform by taking down all college

street map listings from the UniStreets Etsy storefront," which included Etsy's "takedown of over one hundred active listings from [Devcoda's] UniStreets Etsy storefront." (ECF 7, ¶¶ 74, 79). This indefinite suspension of Devcoda's selling capabilities is functionally equivalent to a termination of Devcoda's contractual relationship with Etsy or, at a minimum, Etsy's failure to perform the contract by discontinuing Devcoda's use of Etsy's Services. Section 7 of Etsy's "Terms of Use," which represents the valid contractual relationship between Etsy and its sellers, explicitly provides that termination or suspension of Devcoda's account and access to Etsy's Services dispenses with any "contractual or legal right to continue to use" Etsy's Services. (*See* ECF 16-3, 5[1]). Hence, Devcoda's inability to use Etsy's Services – which are defined as the seller's "rights and responsibilities when you use Etsy.com, Pattern by Etsy, [Etsy's] mobile apps, and the other services provided by Etsy" (*see id*. at 2) – following suspension of the UniStreets account squarely satisfies the "breach or termination" prong of the third element of Devcoda's tortious interference with contract claim.

This is true irrespective of any purported failure by Devcoda to identify a discrete, specific contractual provision breached by Etsy, and TGN's argument to that effect is inconsequential. Simply put, mere termination of Devcoda's contractual relationship with Etsy arising from the suspension of the UniStreets account is legally sufficient to establish a tortious interference with contract claim in Wyoming. By pursuing dismissal of Counterclaim Count II on the basis that Devcoda did not "identify a single contractual provision that Etsy allegedly breached" or "plead any term of the Etsy Terms of Use, Intellectual Property Policy, or any seller agreement that was violated" (ECF 16-1, 9), TGN seeks to impermissibly elevate the pleading

[1] ECF 16-3 is Exhibit B to TGN's Memorandum of Law in Support of the Motion to Dismiss Devcoda's Counterclaim Counts I-III which corresponds to Etsy's "Terms of Use," last accessed on March 17, 2026 at https://www.etsy.com/legal/terms-of-use.

standard beyond that which *Twombly* and *Iqbal* actually require. At the Rule 12 pleading stage, Devcoda must plead facts sufficient to establish the facial plausibility of the tortious interference with contract claim by "plead[ing] factual content that allows the court to draw the reasonable inference that [TGN] is liable for the misconduct alleged." *See Cunningham*, 2020 U.S. Dist. LEXIS 255369, at *4-5. Devcoda's Counterclaim Count II sufficiently alleges the existence of a contractual relationship with Etsy (ECF 7, ¶¶ 69-70), and TGN's intentional and improper inference therewith by submitting baseless DMCA notices which caused a termination of the contractual relationship upon Etsy's indefinite suspension of Devcoda's selling privileges. *Id.* ¶¶ 71-78. These adequately pled facts render Devcoda's tortious interference with contract counterclaim facially plausible and sufficient to survive dismissal under Rule 12(b)(6).

Finally, even if, as TGN contends, Etsy acted "in accordance with its contractual framework" (ECF 16-1, 11), any conduct taken by Etsy in adherence to its own policies does *not* break the causal chain between TGN's wrongful conduct (*i.e.*, intentionally and improperly inducing Etsy's suspension of Devcoda's selling privileges and removal of listings from the UniStreets storefront by weaponizing the DMCA mechanism and submitting knowingly false takedown notices) and the disruption of the Devcoda-Etsy contractual relationship. TGN remains nevertheless liable in tort for the resulting termination of Devcoda's contractual seller relationship with Etsy.

### 2. Devcoda's Well-Pled Facts Are Sufficient to Establish the Facial Plausibility of the "Intentional and Improper Interference" Element

TGN further attempts to dismiss Devcoda's counterclaim for tortious interference with contract on the basis that Devcoda's allegation regarding TGN's false infringement assertions "is a legal conclusion, not a well-pleaded fact" and that TGN's use of Etsy's DMCA reporting

procedures cannot constitute an "improper interference." (ECF 16-1, 11). TGN's misapplication of Wyoming contract law and the *Twombly/Iqbal* standard, again, renders both arguments futile.

Under Wyoming law, a plaintiff asserting tortious interference with contract must allege that defendant's conduct was improper. *See Core-Mark,* 2018 U.S. Dist. LEXIS 230106, at *22. Courts consider the following factors in determining whether the defendant's conduct in intentionally interfering with a contract is improper or not: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *Id.*; *see also Alarm Funding Assocs., LLC v. Sec. Prods. Co., LLC*, No. 1:14-cv-0128, 2015 U.S. Dist. LEXIS 192631, at *33 (D. Wyo. Feb. 13, 2015) (citing Restatement (Second) of Torts § 767 (1977)). This Court recognizes that "interests in existing contracts receive greater protections than interference with prospective contractual relations" and that the sixth factor favors a finding of impropriety if "the interference was *directly* with the other's contractual relation." *See Alarm*, 2015 U.S. Dist. LEXIS 192631, at *37 (emphasis added).

While relaying truthful information and conveying statements "in good faith to protect an economic interest" to a third party cannot form the basis of a tort liability, contractual interference grounded in tort law is proper where the actor employs wrongful means. *See Baldwin v. Harper*, No. 20-cv-160, 2021 U.S. Dist. LEXIS 254739, at *27-28 (D. Wyo. Dec. 16, 2021) (explaining that "[c]ontractual interference is not improper if the actor does not employ wrongful means" but acknowledging that liability attaches if the actor engages in "some affirmative inducement, compulsion or pressure" to make one party breach the contract); *see also*

*Bolsa Res., Inc. v. Martin Res., Inc.*, No. 11-cv-01293, 2014 U.S. Dist. LEXIS 138369, at *26 (D. Colo. Aug. 28, 2014) ("misrepresentations qualify as improper inducements to breach contractual or business relationships").

Devcoda pleads that TGN "interfered with Devcoda's advantageous and contractual relationship with Etsy by falsely claiming, with knowledge of such falsity, in writing, to Etsy.com that Devcoda was selling infringing products on its UniStreets Etsy storefront." (ECF 7, ¶ 71). Counterclaim Count II further asserts that TGN's claims of Devcoda's copyright infringement were "false and made maliciously and with intent to interfere with Devcoda's contractual relationship with Etsy" and that the DMCA takedown notices were submitted "for the improper purpose of suppressing fair competition." *Id.*, ¶¶ 75, 78. Devcoda's allegation of TGN's improper interference with the Devcoda-Etsy contract is not a bare legal conclusion, but rather a well-pleaded factual allegation grounded in the parties' pre-suit communications on the Etsy messaging platform. Hence, Devcoda has pled sufficient factual content to allow this Court to draw the reasonable inference that TGN exercised wrongful means in affirmatively inducing, through misrepresentation or otherwise, Etsy to breach or terminate its contract with Devcoda.

While non-binding on this Court, the recent *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, case addressing plaintiff's DMCA takedown notice filing against a competitor's Amazon listing is instructive as to the instant dispute. 730 F. Supp. 3d 740 (N.D. Ill. 2024). In accordance with Seventh Circuit precedent, the district court acknowledged that "an attempt to prevent product distribution by contacting a third party and asserting meritless copyright claims leads to exposure for tortious interference." *Id.* at 754 (citing *Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 499 (7th Cir. 2014)). In denying plaintiff's Rule 12(b)(6) motion to dismiss defendant's tortious interference with contract counterclaim, the court found

that defendant properly pled the "improper interference" element, concluding that the well-pled facts indicate plaintiff's abuse of the DMCA takedown process by "filing a DMCA notice *without a good faith belief* that [defendant] infringed on [plaintiff's] Copyrighted Works." *Id*. at 755 (emphasis added) (finding plaintiff's takedown notice "unjustified" since "there is no substantial similarity as a matter of law with respect to the protectable elements contained in [plaintiff's copyrighted] work," and thereafter inferring intentional and improper interference).

TGN's DMCA takedown notices elicit the same result. The pre-suit correspondence between the parties make clear and, at a minimum, support the reasonable inference that TGN's claims of copyright infringement were objectively baseless and made without a good faith belief that Devcoda's college street maps are substantially similar to and derived from copying protectable elements of the Asserted Copyright Registrations. As aptly recognized by the *MFB Fertility* Court, such meritless claims of infringement made to an e-commerce provider such as Etsy are sufficient to establish TGN's liability for tortious interference with contract.

Finally, TGN's reliance on the recent Supreme Court decision in *Cox Commc'ns, Inc. v. Sony Music Ent*., No. 24-171, 607 U.S. __ (2026), is misplaced and cannot support the conclusion sought. While the Supreme Court addressed (and ultimately imposed a limit on) the scope of contributory copyright liability for internet service providers under the DMCA's safe harbor provisions, *Cox* has nothing to do with the "improper interference" element of the tortious interference with contract claim, nor the potential liability assumed by an e-commerce seller such as TGN. Hence, TGN's reliance on *Cox* to support that "the existence and use of the DMCA framework do not themselves create wrongful conduct, and they cannot be used to infer it" is not only incorrect but also wholly immaterial to TGN's liability for tortious interference.

### 3. TGN Cannot Rely on Any Litigation Privilege to Shield Its DMCA Takedown Notices From Tort Liability

"Privilege and justification address situations where a defendant has *proper* motives and uses *proper* means to interfere with the contract." *President & Fellows of Harvard Coll. v. Elmore*, 222 F. Supp. 3d 1050, 1062 (D.N.M. 2016) (emphasis added); *see also In re Borges*, 485 B.R. 743, 783 (Bankr. D.N.M. 2012), *aff'd*, 510 B.R. 306 (B.A.P. 10th Cir. 2014) ("The 'without justification or privilege' element can be met by demonstrating that the defendant's actions were done through improper means or with an improper motive."). Thus, a privilege arises only "from an act, taken in good faith, to protect [the privilege holder's] legal interest." *Elmore*, 222 F. Supp. 3d at 1062.

Statements made through the DMCA mechanism are, at best, entitled to a conditional or "qualified" litigation privilege which is contingent upon the subjective motive and bad faith of the party making the statement.[2] *See e.g.*, *Lombardo v. Seuss Enters., L.P.*, No. 16-cv-9974, 2017 U.S. Dist. LEXIS 64854, at *22 (S.D.N.Y. Apr. 7, 2017) (explaining that "statements made by attorneys prior to the commencement of litigation are…protected by a qualified privilege," but that the privilege is lost and does not protect "attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims"). Even the non-precedential district court case upon which TGN relies in full supports the conditional nature of this privilege which may be defeated by malice. *See The Sunny Factory, LLC v. Haoyi Chen*, No. 21-cv-3648, 2022 U.S. Dist. LEXIS 43969, at *9 (N.D.

[2] No court has squarely held that the common law litigation privilege provides a categorical shield for DMCA takedown notices sent to a private commercial platform like Etsy. The better view – supported by the weight of authority – is that the privilege either does not apply, or is substantially displaced by federal law.

Ill. Mar. 11, 2022) ("To defeat Defendants' Motion to Dismiss, Plaintiff must sufficiently allege facts amounting to *malice* that would overcome the *conditional* privilege." (emphasis added)).

Many courts have refused to extend the privilege to statements made during a notice-and-takedown period occurring prior to the initiation of a judicial proceeding. *See e.g.*, *Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-cv-16366, 2022 U.S. Dist. LEXIS 70556, at *7 (D.N.J. Apr. 18, 2022) (refusing to apply a litigation privilege to pre-suit correspondence received by defendant more than one month before plaintiff's filing of the complaint, finding that this timing further corroborated a lack of connection between the pre-suit communications and the current judicial proceeding); *D & D Assocs. v. Bd. of Educ.*, No. 03-1026, 2007 U.S. Dist. LEXIS 93867, at *69-70 n.13 (D.N.J. Dec. 20, 2007) ("The court will not extend the privilege to all situations where the relationship between the parties is contentious or adversarial, and *it is possible* that one of the parties will commence an action in the future" (emphasis added)).

In fact, this Court recognizes the forfeiture of such a conditional privilege where "the statement is published without reasonable grounds for belief in its truth; knowledge or reckless disregard as to the falsity of the defamatory matter; by the publication of the defamatory matter for some improper purpose." *Alcorn v. Labarge*, No. 17-cv-108, 2018 U.S. Dist. LEXIS 242003, at *64-65 (D. Wyo. Aug. 17, 2018) (citing Restatement (Second) of Torts § 596, cmt. a (1977)).

Devcoda does not dispute that some form of qualified or conditional privilege may attach to TGN's DMCA takedown notices submitted to Etsy, but rather that TGN's malice and bad faith conduct – submitting false complaints of copyright infringement "made maliciously and with intent to interfere with Devcoda's contractual relationship with Etsy" (ECF 7, ¶ 78) – destroyed any applicable privilege. Devcoda's well-pled facts sufficiently allege that TGN's accusations of copyright infringement were submitted to Etsy "through improper means" and "with an improper

motive" (*Id*. ¶¶ 71, 75), thus foreclosing the good faith needed for any privilege or justification to attach in the first place. *Elmore*, 222 F. Supp. 3d at 1062.

Notwithstanding TGN's degree of culpability and resultant forfeiture of any privilege, the temporal gap between TGN's submission of its DMCA takedown notices over one month before this litigation officially commenced further undermines extending any litigation privilege to these pre-suit correspondence. While TGN's prior dealings with Devcoda between September and December 2025 certainly qualify as "adversarial" and "contentious," on December 23, 2025 and December 24, 2025 when TGN's DMCA takedown notices were submitted, subsequent litigation was not a surety but rather a mere possibility. *Id*. ¶¶ 19-30.

Devcoda sufficiently pled that TGN had actual knowledge of the obvious lack of similarity and expressive content between Devcoda's college street maps and the Asserted Copyright Registrations, yet nevertheless abused the DMCA framework by submitting two takedown notices in an effort to suppress competition of the UniStreets Etsy storefront. *Id*. ¶¶ 60, 75. When accepted as true, Devcoda's well-pled factual allegations plausibly demonstrate TGN's knowledge of falsity and improper purpose sufficient to overcome any qualified privilege at the Rule 12 pleading stage.

Viewing all the well-pled facts in the light most favorable to Devcoda, a claim for tortious interference with contract has been stated, and TGN's motion to dismiss Counterclaim Count II must be denied.

### D. Construing the Facts in the Light Most Favorable to Devcoda, A Claim For Defamation Has Been Stated and Dismissal is Improper

#### 1. Devcoda Sufficiently Pled the Publication of a False Statement of Fact

TGN seeks dismissal of Devcoda's defamation counterclaim on the basis that Devcoda failed to plead a false statement of fact, contending that "the asserted 'falsity' is nothing more

than a disagreement over infringement,'" and that Counterclaim Count III is "deficient as to publication and harm." (ECF 16-1, 15-17). At the Rule 12 pleading stage, Devcoda's well-pled factual allegations, when taken as true, give rise to a plausible claim for defamation.

To make out a claim for defamation, plaintiff must show that: "(1) the defendant made a false and defamatory communication concerning the plaintiff; and (2) the defendant made an unprivileged publication to a third party; and (3) at the time of the publication the defendant knew the communication was false, or the defendant acted in reckless disregard of whether the statement was false; or the defendant acted negligently in failing to ascertain whether the communication was false." *Thomas v. Rosenberger*, 341 P.3d 390, 402 (Wyo. 2015) (citing Restatement (Second) of Torts § 558 (1977)). Under Wyoming law, a statement is considered defamatory if it "tends to injure the individual's reputation as to diminish the esteem, respect, goodwill, or confidence in which he is held." *Alcorn*, 2018 U.S. Dist. LEXIS 242003, at *63 (explaining that a disparaging statement is actionable as defamation *per se* if the statement "affect[s] the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession"). In particular, statements which impute "a matter incompatible with business, trade, profession, or office" are defamatory on their face and thus do not require proof of special harm. *Id*. at *63 (citing Restatement (Second) of Torts § 573 cmt. e at 570, 575 (1977)).

A statement which can "be proven true or false" is not an opinion and, therefore, considered actionable for defamation. *See Wyo. Corporate Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1187 (D. Wyo. 2014); *see also Spence v. Flynt*, 816 P.2d 771, 782 (Wyo. 1991) (stating that a statement which "is capable of being verified, that is, objectively characterized as true or false" is actionable); *Dworkin v. L.F.P., Inc*., 839 P.2d 903, 915-16 (Wyo. 1992) (explaining that verifiable statements which are "objectively capable of proof or disproof" support an action for

defamation). Here, TGN's copyright infringement assertion is a statement of verifiable fact – either Devcoda copied original, protectable elements of the Asserted Copyright Registrations, or it did not. This is precisely the type of statement which can be proven true or false, thus bringing the DMCA takedown notices communicating Devcoda's alleged copyright infringement squarely within the purview of an actionable false statement of fact.

Contrary to TGN's position, Devcoda is not attempting to litigate copyright infringement through a defamation lens. (ECF 16-1, 15-16). Rather, Devcoda is asserting that TGN made factually false representations to Etsy with damaging consequences to Devcoda's business and reputation, and is supporting this allegation with specific factual circumstances that demonstrate TGN's knowledge of the falsity of its statements sufficient to satisfy the *Twombly/Iqbal* plausibility standard and overcome dismissal at this stage. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

TGN's publication argument – that communicating statements only to Etsy rather than "to customers or the general public" does not satisfy the publication element (ECF 16-1, 16-17) – is incorrect as matter of black-letter Wyoming tort law. All that is required to satisfy this element is communication of the statement "to a third party." *See Lewis v. Francis*, 577 P.3d 433, 437 (Wyo. 2025) (setting forth that publication simply requires a showing that "the defendant made an unprivileged publication to a third party"); *see also* Restatement (Second) of Torts § 577(b) (1977) ("To constitute a publication it is necessary that the defamatory matter be communicated to some one other than the person defamed."). TGN's self-professed requirement that publication mandates communication to customers or members of the general public is fundamentally incorrect and unsupported. Because TGN's false statements were made to Etsy –

a party who is not the subject of the defamatory material – the publication requirement is unequivocally met.

**2. TGN's False Statements of Copyright Infringement Communicated to Etsy Are Not Privileged**

TGN again relies on *Sunny Factory*, a non-binding district court decision, to argue that statements made during the DMCA notice-and-takedown period are absolutely privileged as communications preliminary to litigation. (ECF 16-1, 14-15). TGN's unaccompanied reliance on this case to advance a privilege position with respect to Counterclaim Count III is flawed for the reasons previously set forth with respect to the tortious interference counterclaim. Namely, *Sunny Factory* frames this privilege as *conditional*, not absolute, which is overcome by well-pled allegations of malice. *Sunny Factory,* 2022 U.S. Dist. LEXIS 43969, at *9. More importantly, TGN fails to recognize the courts' reluctance to extend the litigation privilege to *pre-suit communications*, particularly under circumstances where the temporal and contextual connection between the correspondence and forthcoming litigation is attenuated. *See e.g.*, *Hotaling*, 2022 U.S. Dist. LEXIS 70556, at *7; *D & D,* 2007 U.S. Dist. LEXIS 93867, at *69-70 n.13.

Under this Court's own formulation, a conditional privilege "may be lost if the statement is published without reasonable grounds for belief in its truth; knowledge or reckless disregard as to the falsity of the defamatory matter; by the publication of the defamatory matter for some improper purpose." *See Alcorn*, 2018 U.S. Dist. LEXIS 242003, at *64-65. Devcoda's well-pleaded facts satisfy each ground for defeating any such privilege. Devcoda alleges that "TGN acted with malice or with reckless disregard for the truth." (ECF 7, ¶ 90). While TGN points to a supposed lack of "contradictory internal communications," "admissions," and "specific circumstances" in labelling this allegation as a bare legal conclusion (ECF 16-1, 15), the well-pleaded facts regarding TGN's prior, direct communications with Devcoda about the UniStreets

college street map listings and the obvious differences between the parties' respective designs supports an inference that TGN lacked a good faith belief as to Devcoda's infringement of the Asserted Copyright Registrations. This is precisely the type of reasonable bad faith inference drawn in similar contexts, specifically in *MFB Fertility,* arising from plaintiff's unjustified, baseless DMCA "threats" seeking immediate removal of defendant's product listings. *See MFB Fertility*, 730 F. Supp. 3d at 754-55. Under the Rule 12(b)(6) standard, a reasonable inference that TGN knew its DMCA takedown notices were baseless or, in the alternative, that TGN acted with reckless disregard for the truth, is not merely possible but facially plausible.

Finally, TGN's maintained position with respect to *Cox* suffers from the same deficiencies previously mentioned, particularly the Supreme Court's narrow holding which strictly applies to online service providers, *not* mere e-commerce sellers like TGN. Hence, TGN cannot justify dismissal of either Counterclaim Count II or III on this basis.

## V. CONCLUSION

For the foregoing reasons, Devcoda respectfully requests that this Court deny TGN's Motion in its entirety.[3]

[3] In the event that the Court concludes that any of Devcoda's counterclaims were not sufficiently pled, then Devcoda respectfully requests leave to file an amended pleading to address any concerns the Court may have. *Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1219 (10th Cir. 2006) ("the district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint"). Permitting Devcoda to amend its counterclaims would not prove futile but rather would operate to effectively cure any perceived defect by this Court.

Dated: April 14, 2026

/s/ John D. Simmons

Paula A. Fleck (WY #6-2660)
HOLLAND & HART LLP
645 South Cache Street, Suite 100
P.O. Box 68
Jackson, WY 83001
Tel: (307) 739-9741
Fax: (307) 739-9744
pfleck@hollandhart.com

*Attorneys for Defendant and Counterclaim-Plaintiff, Devcoda LLC d/b/a UniStreets*

OF COUNSEL:

John D. Simmons*
Dennis J. Butler*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Delaware Corporate Center
1 Righter Parkway, Suite 220
Wilmington, DE 19803
Tel: (302) 394-6030
Fax: (215) 965-1331
jsimmons@panitchlaw.com
dbutler@panitchlaw.com
* *Admitted pro hac vice*

Julianna L. Hunt*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 965-1330
Fax: (215) 965-1331
jhunt@panitchlaw.com
* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 14, 2026, I electronically filed the foregoing, *Devcoda's Memorandum of Law in Opposition to TGN's Motion to Dismiss Pursuant to Rule 12(b)(6)*, with the Clerk of Court using the Court's CM/ECF system, which constitutes service upon counsel of record for Plaintiff and Counterclaim-Defendant, That's Great News, LLC, and is available for viewing and downloading from the CM/ECF system.

*/s/ John D. Simmons*
John D. Simmons*
* *Admitted pro hac vice*